UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

MARK LATIMER,

    Plaintiff,

v.

WARDEN OF MOOSE LAKE,
MSOP Director GREG CARLSON, and
H.R.U. Officer DEB SCHADEGG,

    Defendants.

Civil No. 09-3211 (RHK/JJK)

**REPORT AND RECOMMENDATION**

Plaintiff, a state prison inmate, commenced this action by filing a pleading entitled "Complaint for Violation of Civil Rights Under 42 U.S.C. 1983." (Docket No. 1.) The case has been referred to this Court for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[1] For the reasons discussed below, the Court will recommend that this action be summarily dismissed pursuant to § 1915A(b).

**I. BACKGROUND**

Plaintiff's complaint includes very little information about the factual background of this matter. However, Plaintiff has submitted various documents with his complaint, which

---

[1] Plaintiff did not tender the statutory filing fee of $350.00 with his complaint, but he instead applied for leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) Plaintiff's IFP application indicates that he might be unable to afford even the initial partial filing fee that prisoners are required to pay pursuant to 28 U.S.C. § 1915(b)(1). Based on the limited information in the IFP application, the Court finds, for present purposes only, that Petitioner has "no assets and no means by which to pay the initial partial filing fee," (28 U.S.C. § 1915(b)(4)), and that this matter should proceed directly to the initial screening process prescribed by § 1915A.

provide some context for this action.

Nearly ten years ago, Plaintiff was convicted and sentenced for criminal sexual conduct in a Minnesota state court criminal case. While he was serving that sentence, he was civilly committed under Minnesota law as a "Sexual Psychopathic Personality," ("SSP").

When Plaintiff approached his conditional release date for his criminal sexual conduct sentence, he was transferred into federal custody to serve out the remainder of an earlier federal prison sentence.[2] After Plaintiff completed his federal prison term, he was transferred to the Minnesota Sex Offender Program, ("MSOP"), pursuant to his state civil commitment. MSOP is sex offender treatment program operated by the Minnesota Department of Human Services, ("DHS").

While Plaintiff was at the MSOP in Moose Lake, Minnesota, he was accused of threatening and striking a staff member. As a result of that incident, the Minnesota Department of Corrections, ("DOC"), took Plaintiff away from the MSOP and transferred him to a DOC prison facility. Sometime later, the DOC formally revoked Plaintiff's conditional release pertaining to his criminal sexual conduct sentence. Thus, Plaintiff is now back in DOC custody, and it appears that the DOC intends to detain him in state prison for at least a few more years. (The exact duration of Plaintiff's present prison confinement will depend on his prison behavior.) When Plaintiff is next released from prison, he presumably will be returned to the MSOP, because his civil commitment still

---

[2] Plaintiff's state criminal sexual conduct conviction may have caused federal authorities to revoke a previously-granted federal probation or supervised release. Additional information about Plaintiff's federal confinement can be found in his submissions in a related case – Latimer v. State of Minnesota, Civil No. 09-3108 (RHK/JJG).

remains in effect.

The documents submitted with Plaintiff's complaint indicate that the DOC considers Plaintiff to be a "dual commit." This means that Plaintiff is currently subject to confinement by reason of his civil commitment, and at the same time he is also subject to confinement on his criminal sexual conduct sentence, because his conditional release was revoked.

Plaintiff disagrees with the DOC's explanation of his "dual commit" status. He evidently believes that his civil commitment should be vacated, or the remainder of his prison term should be vacated, or both.

Plaintiff is presently attempting to sue three Defendants: (1) the "Warden at Moose Lake," (2) Greg Carlson, who is identified as the Director of the MSOP, and (3) Deb Schadegg, who is identified as an officer of the DOC Hearings and Release Unit ("HRU"). All three Defendants allegedly played some role in Plaintiff's removal from the MSOP and his transfer back to DOC custody. Plaintiff claims that the Warden at Moose Lake was "informed" about the removal and transfer, and that Defendant Greg Carlson "allowed D.O.C. officials onto MSOP grounds and aided in [Plaintiff's] arrest + transportion [sic] without a warrant." (Complaint, "Statement of Claim," ¶s 9-10.) Defendant Deb Schadegg allegedly "taped the revocation hearing and is on tape claiming that [Plaintiff is] in D.O.C. custody at the MSOP hospital and the D.O.C. doesn't need a warrant to arrest [Plaintiff]." (Id., ¶ 11.) Plaintiff apparently believes that Defendants violated his constitutional rights by moving him from the MSOP to a DOC facility without first satisfying all of the constitutional requirements for the formal arrest and detention of a free citizen.

The complaint describes the relief that Plaintiff is seeking in this case as follows: "Release me from MSOP hospital and pay 1,000.00, release me or both inclueding [sic]

3

MSOP." (Complaint, p. 3, § V.)

## II. DISCUSSION

Because Plaintiff is a prisoner who is attempting to sue various government employees, his pleading is subject to initial "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the complaint in every civil action brought by a prisoner against governmental employees or entities "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. To the extent that a prisoner's pleading fails to state an actionable claim, it must be summarily dismissed. 28 U.S.C. § 1915A(b).

Here, the Court finds that Plaintiff's complaint fails to state any cause of action on which relief can be granted, because all of his claims are barred by Heck v. Humphrey, 512 U.S. 477, 481 (1994). In Heck, the Supreme Court held that a person in state custody cannot challenge the legality of his or her confinement by means of a federal civil rights action; habeas corpus is the exclusive federal remedy for such challenges. Id. at 481; see also Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973) (same). Even when a prisoner is not directly challenging the fact or duration of his detention, he cannot bring a § 1983 civil rights action that would effectively "call into question the lawfulness of [his] conviction or confinement." Heck, 512 U.S. at 483.

In this case, it is clear that Plaintiff is directly challenging the validity of his confinement. He has plainly stated that he is seeking a judgment that would, in his own words, "release me from MSOP hospital." According to Heck, such relief cannot be granted

4

in a civil rights action. The only federal remedy that can provide such relief is habeas corpus.

Furthermore, even if Plaintiff abandoned his request for release from the MSOP, and sought only damages for his allegedly unlawful transfer to DOC custody, this action still would be barred by Heck. Plaintiff's claims stemming from his removal and transfer episode are predicated on an assumption that the DOC has no legal right to detain him. A judgment in Plaintiff's favor on his "illegal arrest" claims, (i.e., his claims that he was illegally removed from MSOP and transferred to DOC custody), would necessarily cast doubt on the legality of the DOC's custody of Plaintiff. Simply put, Plaintiff cannot win this case without establishing that his current DOC custody is unlawful.

Because Plaintiff's present lawsuit clearly calls into question the lawfulness of his current DOC confinement, this action is barred by Heck. If Plaintiff believes that his constitutional rights were violated when he was taken back into DOC custody, he will have to vindicate that belief by other means, (presumably a state or federal habeas corpus proceeding), before he can seek relief in a federal civil rights action.[3]

## III. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff's complaint fails to state a cause of action on which relief can be granted. The Court will therefore recommend that Plaintiff's complaint be summarily dismissed pursuant to 28 U.S.C. § 1915A(b), and

---

[3] Plaintiff's current complaint cannot be construed to be a habeas petition, and entertained as such, because (a) he has not clearly explained the specific constitutional bases for challenging his civil commitment or his incarceration by the DOC, and (b) he has not shown that he has exhausted his state court remedies for any such challenge(s). See 28 U.S.C. § 2254(a) and (b).

5

that his application for leave to proceed IFP, (see n. 1, supra), be denied. See 28 U.S.C. § 1915(e)(2)(B).

Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $350 filing fee.[4] To date, he has not paid any fee at all, so he still owes the full $350 fee. Prison officials will have to deduct that amount from Plaintiff's prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Lastly, the Court will recommend that the dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

## IV. RECOMMENDATION.

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's application for leave to proceed in forma pauperis, (Docket No. 2), be **DENIED**;

2. This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915A(b);

3. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the full $350, in accordance with 28 U.S.C. § 1915(b)(2); and

---

[4] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

4. The dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

Date: December 8, 2009

    *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 22, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.